THE DEXTER SAVINGS BANK *vs.* SAMUEL COPELAND, executor.

Penobscot. Opinion April 9, 1885.

*Promissory notes. Consideration. Assignment.*

The treasurer of a savings bank made his note for two thousand dollars, running to the bank, and secured it by an assignment of a life insurance policy on his own life, for the purpose of making up to the bank a loss on loans for which he was neither morally nor legally responsible. After his death the trustees of the bank found the note and policy, which was the first knowledge they had of the existence of either, and they applied the insurance money first to the payment of the note, and the balance they delivered to the executor of the deceased treasurer. *Held :*

1. That the note was without consideration and void.

2. That the assignment of the policy was void for want of a delivery.

3. That the amount applied by the trustees towards the payment of the note should be allowed as a credit in an action by the bank against the

executor to recover any balance that may have been due from the treasurer to the bank.

ON REPORT.

The case was submitted to the law court on the writ and pleadings, and auditor's report, the material portion of which is as follows :

"We accordingly find a balance due from Mr. Barron's estate to the plaintiff bank, including interest to October 1, 1883, of $2,011.38.

"We do not feel called upon to form any opinion upon the question of murder or suicide, because we are satisfied from the evidence that there was substantially no money in the bank at the time of Mr. Barron's death, and whether Mr. Barron came to his death by murder or otherwise, the amount of money in his possession in the bank at the time was so inconsiderable as not to materially affect the situation of these parties litigant, or change the result of our conclusion.

"We allow no credits other than those herein before specified, but we report to the court the facts connected with another transaction, as follows :

"It appeared in evidence that a note for $2,000, designed as a gift to the bank by Mr. Barron, dated July 2, 1877, and payable in five years after date, was found by the officers of the bank after Mr. Barron's death, among the other papers of the bank, the officers having no previous knowledge of the existence of any such note. The note was secured by an assignment of a policy of insurance on Mr. Barron's life for $5,000 ; to the note was attached a memorandum stating the purpose and object of giving it.

"The note and endorsement thereon and copy of the memorandum and assignment are hereto annexed, marked 'L,' also a statement (in print) of the officers of the bank relating to the same, put in evidence by the defendant and the same is hereto annexed marked 'M.' It appears by endorsement on said note, and by said memorandum, and also by the testimony that this note was professedly given to the bank by Mr. Barron on account of a considerable loss on the Leavitt loan, so called, and had no other consideration.

"We find as matter of fact that Mr. Barron was in no way legally or otherwise liable on account of said loss and under no obligation to make good any part of said loss.

"The defendant also put in the cash book of the bank showing an entry under date of July 16, 1878, after Mr. Barron's death, showing a debit to cash of $2,075.44, collected on this note, the same being the payment of the amount of this note, principal and interest.

" The aforesaid entry on the cash book was :

Dr.                          Cash.
1878.                        (Loan.)                     (Earnings.)
July 16, J. W. Barron, Col. $2,000                      $75.44.

" The result of this entry was a debit to cash of $2,075.44, and a credit to loan of $2,000 and to earnings of $75.44, or in other words, it shows that Mr. Barron's note thus presented by him to the bank was paid, principal and interest, July 16, 1878, and it was admitted by the officers of the bank that they collected the $5,000 life insurance money on or before said July 16, 1878, and retained enough to pay said note and interest ($2,075.44, as aforesaid) and paid over the balance to the defendant, as executor of Mr. Barron. This note purports to have been given to the bank, in the manner aforesaid, July 2, 1877, but no entry of the transaction was made in the cash book, as is usual when a note is taken. But on November 17, 1877, it was entered on the ledger to debit of " loans on collaterals " without any posting marks as it had never been entered on the cash book. It was also entered to the credit of reserved fund on the ledger as of July 1, 1877, but probably on November 17, 1877, in this manner ; the reserved fund had stood on July 1, 1877, $720.18. These figures (720.18) were recorded in ink, and Mr. Barron, to add the $2,000 to this fund, had written with pencil the figure '2' before the figures $720.18, thus increasing the amount to $2,720.18.

" The Leavitt loan, on account of which this note purported to have been given, had previously been reduced by the sum of $2,662.20 by charging the same to profit and loss. The effect of these two entries connected with the $2,000 note was to force up

the loan account and the reserved fund account on the ledger each by the sum of $2,000. . . .

"Upon this branch of the defence we merely report the facts and claims of the parties thereon to the court and submit the matter wholly to their decision.

"The amount of said $2,075.44 including interest from July 16, 1878, the date of payment to the bank, to October 1, 1883, date of this report is $2,723.67."

("L" Memorandum.)

"This policy of life insurance was obtained by me for the following reasons and purpose : I know not how long I may live and I desire if I should die suddenly or in any way be incapacitated from transacting or closing up my business that some way may be provided to make good any possible or probable loss to the bank by reason of any neglect of mine or occurring under my administration during my term of office. I know that there will be a loss to the bank on the loan we made the Leavitts of Cambridge on their farms and lumber, and there may be on some other loans. I do not at this time know of a single thing unless it may be some of our bonds, on which we shall lose a single dollar, and I would be willing now to take the property of the bank and pay all its liabilities. I do not regard myself as being the cause of the Leavitt loss any more than the trustees ; we were all of us deceived in that transaction ; still they have no . pay for their services and I have, and so far as I am able I mean that the bank shall never lose anything while I am its treasurer. I mean if I live long enough to make good to the bank this Leavitt loss which must reach, including interest to as much as $2,500 or perhaps $3,000. This policy of insurance will pay the loss in case I die, and if I live I can sometime make it good, although I can not do so now without trouble to my family. I desire strict and exact justice in the execution of this trust and for this purpose I ask the trustees to do this : Let them appoint A. F. Bradbury and Job Abbott if they be living, to make a thorough examination of all the notes held by the bank secured by mortgages or collaterals, including the Leavitts, and calculate as nearly as possible any loss likely to occur, and if in their

judgment there shall be anything left of the insurance, to pay the remainder over to my family. I do this trusting to their honor, not having bound them in any way. I have not notified the company of this assignment as I did not think it necessary, for if the insurance company do not recognize the assignment my executor can adjust the business and pay it over to the trustees. I ask further that if I make good this loss that they shall relieve my family of all liability on account of the warrantee deeds I have given of the Leavitt property against the woman's right of dower.

(Signed)                                    J. W. Barron."

*Josiah Crosby* and *J. H. Drummond*, for the plaintiff.

*D. D. Stewart* and *T. H. B. Pierce*, for the defendant.

DANFORTH, J.   This case having been submitted to auditors comes before this court upon their report with the documents and evidence attached, with the provision that if in the " opinion of the court the plaintiff has made out a *prima facie* case for any balance, the action is to stand for trial upon such items as the court shall find the plaintiff has made a legal *prima facie* case to sustain, otherwise, judgment for the defendant shall be rendered in accordance with the law of the case."

Under this report the first question that arises is whether the plaintiff has made out a *prima facie* case for " any balance " in its favor. The report of the auditors shows a balance for the plaintiff and so far perhaps a *prima facie* case for that balance. But from the terms of the report as well as from the course pursued by the counsel in the argument we do not understand that the balance so found is sufficient, or that the parties so understood it, but rather that the decision shall rest upon the facts reported.

The auditors have not made a full report of the evidence upon which their conclusions are based, but have reported what certainly appears to be a full, fair and clear report of the facts upon which their statement of the account was made up. Relying upon these facts there are several items allowed by the auditors to which the defendant objects and some credit dis-

allowed which he claims should have been allowed. On the other hand it does not appear that any item of charge has been omitted which the plaintiff claims should have been allowed, or credit allowed which should have been rejected.

There is one item claimed by the defendant as credit, the money received by the bank upon the testator's note for two thousand dollars, upon which the auditors have reported the facts but which they have neither allowed nor rejected; leaving it to the decision of the court. Assuming the account as stated by the auditors to be correct as far as it goes, if this item should be allowed, it changes the balance, and upon this question depends the result of this case in its present stage.

Ought the proceeds of this note to be allowed the defendant as a credit? From the facts as they appear in the report we think they should be. The note was in fact never delivered to the bank. It remained under the maker's control so long as he lived, was payable by its terms only from an insurance upon his life except at his option, and it does not appear that during his life he elected to pay it in any other way, nor was it in his lifetime accepted by the bank for its officers had no knowledge of its existence until after his death.

But independent of these considerations by an indorsement upon the back of the note which became a part of it, it was given to make up in part for a loss for which the maker was neither legally nor morally responsible. The note was therefore without consideration and not valid or binding upon the maker even as a gift as is universally conceded, certainly since the case of *Parish* v. *Stone*, 14 Pick. 198. It could not therefore have been collected by any legal process and the appropriation of the money received upon the insurance policy to its payment was without authority, or validity.

The note itself, as well as the indorsement upon the back, shows that it was secured upon a life insurance policy. The policy shows an absolute assignment to the bank, except so far as it was limited by a separate, but accompanying writing. This assignment, like the note, was not delivered or accepted, nor was it intended to operate during the assignor's lifetime.

It being, therefore, in the nature of a testamentary disposition of his property, was a void instrument, either with or without the note. But under the accompanying memorandum, the trustees of the bank, though having no legal rights to the proceeds of the insurance, unlike the note, had a color of authority for collecting the money and appropriating it as directed. This memorandum explained more fully the reasons for, and purpose of, obtaining the insurance, and what was to be done with it in case of the death of the insured. At the beginning, after recognizing the liability to sudden death or incapacity to transact business, the insured declares his purpose to be, "that some way may be provided to make good any possible loss to the bank, by reason of any neglect of mine, or occurring under my administration, during my term of office." He refers to the Leavitt loss, and of his intention, if he *lives long enough,* to make good to the bank that loss. He then says, "I desire strict and exact justice in the execution of this *trust,*" and names certain persons he desires to have appointed by the trustees of the bank to examine the securities, calculate the probable losses, and pay the balance, if any, to his family. At the close, he adds a request which amounts to a condition that if he made good the loss, his family should be indemnified against all liability for dower under deeds of warranty he had given of the Leavitt property. Here then, was an instrument intended to impose a trust upon the officers of the bank to receive the money upon the policy, and after pursuing the course pointed out to ascertain the losses to the bank, both those for which the insured was liable, as well as those for which he was not, and after making such losses good, pay the balance to his family. Without following the directions, the trustees have appropriated sufficient of the money to pay the note and call it a gift to the bank. This money has gone into the funds of the bank; it has been entered upon its books. This suit is, in effect, to recover a deficit as shown by the books. This is as much a credit as any other sum credited upon the books, and in making up the deficit, should be taken into consideration precisely as the other sums were; and there is no more need of filing it in set-off than of the others. The appro-

priation was an illegal one. Making the disposition of it they did, the trustees can not complain if it is treated as a credit, and if so treated, the defendant has the right to say it shall be first applied to losses for which his testator was liable, and by making that claim in this action, it follows that the amount necessary and used to make good such losses, he can not recover in this or another action. He can not recover for the excess in this action, for no account in set-off has been filed. Whether he can do so in any other, we have no occasion now to decide.

There is, therefore, from the facts reported, no *prima facie* balance in favor of the plaintiff, and under the provisions of the report, the court must render " such judgment for the defendant as shall be in accordance with the law of the case. "

That judgment can not be for any balance, for the reason already given, that no account has been filed in set-off, nor can any specific balance be made, for at most under this report, we can only decide whether any item is *prima facie* sustained by the facts, and can not decide its validity as upon a full hearing upon its merits. Therefore, no judgment should be entered which will preclude the plaintiff from a further hearing upon these items in another action, so far as they may be available in defence of a suit to recover the money paid upon the note or otherwise. For these reasons the entry must be,

*Plaintiff nonsuit.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.