Falk *v.* Janes.

## Isaac N. Falk, as receiver,

*v.*

## Lewis T. Janes, executor &c., et al.

1. Personal property, situate in a jurisdiction other than that of the domicil' of its owner, by his act or with his assent, is subject to judicial process or proceedings against such owner in the jurisdiction of the situs of the property, and, on compliance with statutory provisions, becomes charged with claims. attaching thereto by virtue of the laws of such state.

2. A foreign receiver will not be refused recognition as a suitor in our courts,. even if a claim of one of our own citizens will be injuriously affected thereby,. if said receiver prosecutes solely in behalf of a party who is also a citizen of' this state.

3. C., an executor of an estate, to which he was indebted, deposited a policy of insurance on his own life, for an amount greater than his indebtedness, with a paper stating it was collateral for the payment of his indebtedness whatever' the deficiency might be, in a box with other papers of the estate. He testified' it was done so that if he should drop off, they might take that with other securities. He kept the box and papers in his possession, and gave no notice of any attempted transfer to the insurance company or any one interested in the estate.—*Held,* that such acts did not assign the policy or create a lien thereon superior to the rights of a creditor which had attached by virtue of judicial proceedings.

On final hearing on the pleadings and proofs taken in open. court.

*Mr. Theodore Little,* for the complainant.

*Mr. Augustus W. Cutler,* for the defendants, Janes and Cutler:.

*Mr. Frederick G. Burnham,* for the Mutual Life Insurance Company.

*Mr. Stephen H. Little,* for the defendant Pierson, adminis- trator.

Green, V. C.

Complainant was appointed a receiver of the estate of Daniel D. Craig, by a judge of the city court of New York, in a suit;

wherein James M. Frost was plaintiff and the said Daniel D. Craig was defendant.

This controversy arises over an endowment policy not under seal, issued by the Mutual Life Insurance Company of New York to said Daniel D. Craig, payable in 1895.

The complainant claims that, as such receiver, by force of proceedings taken in the suit in which he was appointed, and the statutes of the State of New York, he has a lien upon the fund covered by this policy, to the extent of the judgment therein and his expenses.

Daniel D. Craig was an executor of the will of Henry Baird, late of Somerset county, New Jersey, deceased, and was, on November 8th, 1890, discharged from his trust as executor and trustee, except that he should account, and Lewis T. Janes was, on November 14th, 1890, appointed by the orphans court of Somerset county, administrator with the will annexed and trustee under the will of Henry Baird, deceased, in the place of the said Craig.

The defendant Janes claims that the policy in dispute was assigned by Daniel D. Craig to the estate he represents, to secure any indebtedness that might be due from said Craig to said estate.

The defendant Augustus W. Cutler is counsel for the administrator, Janes, and custodian of the policy.

The Mutual Life Insurance Company was made a party defendant.

The prayer of the bill is for a decree establishing the title of the complainant, as receiver, to said policy, requiring the defendants to deliver the same to him, or that the policy be sold, determining the rights of the complainant and of the said executor and trustee in and to the same and their right to priority, and directing that, out of the proceeds of the sale of said policy, the complainant should be first paid the amount due on the judgment and for a receiver &c.

All the defendants answered except Daniel D. Craig, against whom the bill was taken as confessed.

Pending the trial Daniel D. Craig died, and the insurance company, having obtained leave, filed a supplemental answer setting up such death, with a cross-bill in the nature of an interpleader, and paid the amount due on the policy into this court.

Philander B. Pierson was appointed by the prerogative court, as administrator *ad prosequendum* of the estate of Craig, and appeared in the suit.

As the pleadings presented all the claims of the parties, and as the evidence taken embraced all they desired to present, it was agreed, in open court, that the pleadings and evidence should stand and be applicable to the new condition, and the cause be disposed of thereon.

The judgment creditor, James M. Frost, who is a resident of Morris county in this state, recovered a judgment against the said Daniel D. Craig, in the city court of the city of New York, October 29th, 1889, for $1,063.33. His judgment was docketed in the clerk's office of the city and county of New York, on the same day, and execution issued thereon. This was returned November 6th, 1889, wholly unsatisfied.

On November 7th an order for the examination of the defendant in supplemental proceedings was made, with an order restraining him from disposing of his property. These were served on the defendant, on the day they were issued, by Mr. S. H. Little, attorney of the plaintiff.

At that time the defendant Daniel D. Craig had the policy in his possession in the city of New York, and showed it to Mr. Little.

On November 8th, 1889, a warrant was issued in the cause for the arrest of the defendant.

Mr. Little went with a deputy sheriff to arrest the defendant at his abode in New York city. Mr. Craig desired a postponement of the execution of the warrant until the next day, which Mr. Little refused unless he (Craig) put the policy under the control of his nephew, a Mr. Albro. This was done, and the warrant of arrest was not served at that time.

On the next day, November 9th, 1889, Mr. Albro and the defendant Craig went to the office of Mr. Little, Mr. Albro still

having the policy in his possession, and the warrant of arrest was then and there served upon Mr. Craig.

On giving security Mr. Craig was released from custody, and such proceedings were had in the cause that on December 2d, 1889, Isaac N. Falk, the complainant herein, was "appointed receiver of the property of the defendant," the order reciting that after he had qualified "he shall be invested with all the rights and powers of a receiver, as such, according to law."

The order appointing the receiver was filed in the clerk's office of the county of New York December 2d, 1889, and the receiver qualified, by giving a bond as required by law, on the same day.

Proceedings were taken in the cause to procure an order on the defendant requiring him to deliver the policy to the receiver, and an order to that effect was made, after which an order to show cause why that order should not be modified was granted; on the hearing of which the original order was affirmed, and the defendant ordered to deliver the policy to the receiver within a certain time.

An appeal was then taken to the general term of the city court, which affirmed these orders, and an appeal was then taken to the general term of the common pleas, where the order was modified so as to require the defendant Craig, instead of delivering the policy to the receiver Falk, to execute and deliver to him an assignment of said policy of insurance, and of all his right, title and interest in and to the same and to the proceeds thereof.

This last order was made April 9th, 1890, and on the same day Craig made an assignment such as was contemplated in the order to the complainant.

From this statement it will be seen that the defendant was in the city of New York on the 9th of November, 1889, with the policy in his possession or control, at the time the warrant of arrest was served.

The code of civil procedure of New York of 1880, which was put in evidence, provides (*section 2468*):

"The property of the judgment debtor is vested in a receiver, who has duly qualified, from the time of filing the order appointing him, or extending his receivership, as the case may be, subject to the following exceptions:

"*First.* Real property is vested in the receiver only from the time when the order, or a certified copy thereof, as the case may be, is filed with the clerk of the county where it is situated.

"*Second.* Where the judgment debtor, at the time when the order is filed, resides in another county of the state, his personal property is vested in the receiver only from the time when a copy of the order, certified by the clerk in whose office it is recorded, is filed with the clerk of the county where he resides."

Section 2469 :

" Where the receiver's title to personal property has become vested, as prescribed in the last section, it also extends back by relation, for the benefit of the judgment creditor in whose behalf the special proceedings were instituted, as follows: 1. Where an order, requiring the judgment debtor to attend and be examined, or a warrant, requiring the sheriff to arrest him and bring him before the judge, has been served, before the appointment of the receiver, or the extension of the receivership, the receiver's title extends back, so as to include the personal property of the judgment debtor, at the time of the service of the order or warrant."

The other provisions of the section have no application to this case.

All the formalities required by the code having been complied with by the receiver, the title to such property of the defendant Craig, as was at the time subject to the laws of New York, vested by relation, by force of the statute, in the receiver at the time when the warrant of arrest was served on Craig, viz., November 9th, 1889, at which time the policy was in Craig's possession in the city of New York. The title of the receiver vests by force of the statute and not under any formal assignment or conveyance by the judgment debtor. *Porter* v. *Williams, 9 N. Y. 142, 148; Bostwick* v. *Menck, 40 N. Y. 383; Attorney-General* v. *Atlantic Mutual Life Ins. Co., 100 N. Y. 279, 283.*

There is no question as to the jurisdiction of the city court of New York over the person of Craig. He was within the jurisdiction and was subjected to personal service of the process and orders in the cause.

Independent of the question of the actual presence of Craig in New York, I take the law to be settled that if the property was not in the jurisdiction of the domicil of Craig, but was in the

·city of New York, by his act or with his assent, on the day the warrant was served on him there, and the ownership thereof was at the time in him, it was subject to judicial process or judicial proceeding against him there, and was, on compliance with the statutory provisions, charged with the claims attaching thereto by virtue of the laws of that state (*Green* v. *Van Buskirk, 5 Wall. 307; S. C., 7 Wall. 139; Hervey* v. *Rhode Island Loco-motive Works, 93 U. S. 664; Cronan* v. *Fox, 21 Vr. 417; Eliza-bethtown Savings Institution* v. *Gerber, 8 Stew. Eq. 153, 156; In re Queensland M. & A. Co., 1 Ch. 536* (1891); *affirmed, 7 Ch. 219* (1892), and that such title as Craig possessed in the policy on ·November 9th, 1889, was vested in Falk as receiver on his complying with the requirements of the statute regulating his appointment.   Will the complainant's lien as such receiver be respected and enforced in the courts of New Jersey, the security being now in this state in possession of a citizen thereof, also a creditor of the said Craig?

A receiver appointed by a court of another state is recognized in this state as competent, under certain conditions, to prosecute a suit in the courts thereof.   *Knapp* v. *Hoboken, 9 Vr. 371; Hurd* v. *City of Elizabeth, 12 Vr. 1; Bidlack* v. *Mason, 11 C. E. Gr. 230; National Trust Company* v. *Miller, 6 Stew. Eq. 155; Sobernheimer* v. *Wheeler, 18 Stew. Eq. 614.*   Counsel for ·defendant Janes urges that such standing in court should not be accorded in this case, because thereby a foreign receiver may be ·enabled to take funds of the judgment debtor out of the state, to the prejudice of his client, who is a citizen thereof and a creditor of said judgment debtor.   Chancellor Runyon, in *Bidlack* v. *Mason, supra,* says : " The aid of the court is extended to foreign receivers on principles of comity."   Chief-Justice Beasley, in *Hurd* v. *City of Elizabeth, supra,* says :  " That the officer of a foreign court should not be permitted, as against the claims of creditors resident here, to remove from this state the assets of the debtor, is a proposition that appears to be asserted by all the decisions."

The chief-justice dissents from the position taken by some, that a receiver will not be recognized as suitor outside the juris-

dictional limits of the court appointing him, and states as a more
correct definition of the rule " that a receiver cannot sue, or other-
wise · exercise his functions, in a foreign jurisdiction wherever
such acts, if sanctioned, would interfere with the policy estab-
lished by law in such foreign jurisdiction."

Further on, he says : " It (such power) could not be exercised
in a foreign jurisdiction to the disadvantage of creditors resident
there, because it is the policy of every government to retain in
its own hands the property of the debtor until all domestic
claims against it have been satisfied."

Such limitation is based, then, on the principle that the first
duty of the state is to its own citizens. While, if they are not
affected, it will, by comity, permit to a foreign receiver, repre-
senting foreign creditors, a standing in court to recover property
to apply in satisfaction of their claims; such comity is not to be
extended if there are domestic creditors, its own citizens, whose
claims will be thereby impaired or jeopardized.

In this case we have a defendant, a citizen of New Jersey, who
invokes this doctrine, but, on the other hand, the complainant is
a receiver in a suit prosecuted by James M. Frost, another citi-
zen of this state. Under his appointment complainant is receiver
only for Mr. Frost, as it does not appear he is appointed in any
other suit, and he is entitled to be regarded only as the repre-
sentative of Frost and to be paid only his debt. *Bostwick* v.
*Menck, supra.* He is prosecuting, then, not in behalf of foreign
creditors, but in the interest of, and for, one of our citizens. This
is a condition of affairs which does require the refusal of recogni-
tion of a foreign receiver as a suitor, and the suit should be re-
tained.

What interest, then, had Daniel Craig in the policy on the 9th
of November, 1889 ? The defendant Janes claims that this
policy belongs to the estate of Henry Baird—*first*, by force of an
assignment in writing; *second*, by virtue of certain acts of Mr.
Craig.

The defendant Janes claims by virtue of an assignment, in
writing, which is as follows :

"Know ye that I, Daniel D. Craig of Morristown, New Jersey for and in consideration of the sum of one dollar to me in hand paid and other good and valuable consideration me thereto moving, do for myself, my executors and administrators sell, assign, transfer and set over to the estate of Henry Baird deceased, all my right, title and interest of, in and to a certain policy of insurance No. 261,527 issued by the Mutual Life Insurance Company of the City of New York upon my life.

"Witness my hand and seal at the city of Morristown, New Jersey the twentieth day of February, eighteen hundred and eighty-nine.

"(Signed)      D. D. CRAIG.   [SEAL.]"

purporting to have been acknowledged October 18th, 1889, in the city of New York before Albert I. Sire, a notary public.

Passing by objections to the form of this instrument, was it effective before the receiver's rights attached?

The bill of complaint in this cause called upon the defendants Mr. Janes and upon Mr. Cutler respectively to state when, where, by what conveyance, from whom and fully upon what terms each received the life insurance policy. Answer was required under oath, and Mr. Janes, in his answer, says he secured and obtained from the said Daniel D. Craig a policy of insurance on the life of said Daniel D. Craig issued by the Mutual Life Insurance Company of New York, dated March 21st, 1885, for $2,500, and payable on the 23d day of March, 1895, marked 261,527, and accompanying the said policy was an assignment in the words and figures following, that is to say (setting out the assignment and the acknowledgment), but he nowhere states *when* he obtained the same.

Mr. Cutler, in his answer, says that he is proctor of Mr. Janes's administrator, and as such proctor has received the policy of insurance referred to in the said bill, and the assignment of the same by the said Daniel D. Craig, late executor and trustee of Henry Baird, deceased, and holds the same as proctor of Lewis T. Janes's administrator with the will annexed and trustee aforesaid, but does not state when, or from whom, he received the said papers.

The order made in the city court of New York on December 2d, 1889, in the case of *Frost* v. *Craig*, prepared in the office of Albert I. Sire, the attorney of Craig in New York, was intro-

·duced in evidence. A comparison of the handwriting of this order so prepared in the office of Mr. Sire with the body of the assignment relied on, clearly shows that both papers were written by the same hand. The assignment is dated February 20th, 1889, and purports to have been acknowledged October 18th, 1889, and although the question as to the control and ownership ·of Craig of this policy was directly involved in the proceedings in New York on the order to show cause, Mr. Craig, who was ·extensively examined as a witness November 25th and 26th, 1889, ·on the supplemental proceedings, did not mention this assignment, and although Mr. Albert I. Sire, Mr. Youngblood and Mr. Cutler each made an affidavit verified December 19th and ·20th, 1889, all subsequent to the date of acknowledgment of ·this assignment, which affidavits were used on the hearing of the ·order to show cause, there is not a word in either of them to prove that the assignment existed on November 9th or December ·2d, a fact which might have been conclusive if it could have been established.

An adjournment was taken in this cause for the purpose of ·examining Mr. Sire with reference to this matter, as well as any ·other testimony he might be able to give, but defendants failed to produce him. I am constrained to believe that this paper was ·prepared subsequent to the proceedings in the suit in New York, ·and subsequent to the time it purports to be dated, as well as the ·time it purports to be acknowledged, and was so antedated for the purpose of depriving the complainant of any rights which he might have acquired under the laws of New York, and that it had no existence on the 9th of November, 1889, when the complain·ant's lien on the policy vested. But if it did, delivery was essential to its validity as a transfer of title. The possession of Mr. ·Sire and Mr. Youngblood, both of whom were Mr. Craig's counsel, was his possession. The assignment became effective only when it was delivered to Mr. Cutler as the representative of the Baird estate. No date is reliably fixed as to when it came into ·his possession. Mr. Youngblood says he received it between November 9th and 10th and December 19th. Mr. Cutler does not attempt to give any date when he received it. It appears

from his examination that he gave notice to the insurance com-
pany December 27th, and from his affidavit, verified December
19th, it appears that he at that time had it. From the contest
for the ownership of the policy, it is fair to presume that this
notice was given soon after the delivery of the assignment to
Mr. Cutler.

I find nothing in the evidence to indicate that the assignment
was delivered to him until after the rights of the complainant,.
whatever they might have been, had attached.

It is next claimed that the estate of Baird, of which Mr. Craig
was the executor and trustee, is entitled to the first lien upon the
policy, by virtue of certain acts alleged to have been performed by
Mr. Craig with reference thereto.

No testimony was given before me to establish this contention ;.
but, after the death of Mr. Craig, and on the last hearing, the
evidence taken in supplemental proceedings being offered, it was
agreed that the record in the court of common pleas of New York,.
on appeal from the order, be in evidence.

It appears by this that Mr. Craig, being examined November
25th, 1889, testified, with reference to the policy in question, that
he might have been spoken to about assigning the policy to Ed-
ward Halsey, of Morristown ; that he told Frost that he was not
ready to assign it to secure his claim ; that a good many had been
after it; that he did not want one man to get everything.

"Q. Why did you refuse to assign it to Frost?

"A. I done it because it belonged to an estate that I was executor for; at
least I kept it among those vouchers.

"Q. What estate was that?

"A. Baird's—Henry Baird.

"Q. Where did you keep those vouchers?

"A. I kept them in my box as a general thing; a tin box I had.

"Q. Are you indebted to that estate?

"A. I think not; somebody wanted to get me removed as executor, not be-
cause I did not have the securities there.

"Q. Did you owe that estate?

"A. Not if they put me out; I turned over all that I had except this policy,.
and I turned over this policy; I kept that in with other papers belonging to
the estate.

"Q. How much did you owe that estate?

Falk *v.* Janes.

"*A.* I do not know as I owe it anything now; I can't tell.

"*Q.* Who has those estate papers now?

"*A.* I cannot tell; I rather think my counsel has them.

"*Q.* What is his name?

"*A.* I have two; Youngblood is one—at Morristown; that is the only one I have up there.

"*Q.* Is he custodian of the papers of the Baird estate?

"*A.* I tell you I do not know.

"*Q.* Is that policy with the papers of that estate?

· "*A.* Yes; I suppose it is.

"*Q.* When was that policy put among these estate papers?

"*A.* I cannot state the day exactly; it was a long time ago; I think it was in February last; I put a paper in there to show that that belonged with the mortgage, so as to show it belonged to them.

"*Q.* Where is that paper?

"*A.* I don't know anything about where the papers are.

"*Q.* What interest had that estate in that policy?

"*A.* Whatsoever the deficiency should be; if I should drop off they might take that with other securities.

"*Q.* Where is that policy now?

. "*A.* I don't know.

"*Q.* When did you part with it?

"*A.* I haven't parted with it yet, unless, as I tell you, they might have taken it; I put it in with the other securities; I understood they were going to have some one appointed in my place."

On further examination, on November 26th, 1891, and being examined by his own counsel, he says:

"*Q.* Had you a right to part with said policy since February 20th, 1889?

"*A.* Well, I don't think I had a right to part with it unless I put something else of the same value in its place.

"*Q.* Was it your individual property since February 20th, 1889?

"*A.* No; I held it in trust

"*Q.* For whom did you hold it in trust?

"*A.* H. Baird's estate; I am executor.

"*Q.* On your direct examination you said the reason you refused to assign the policy to Frost was because it belonged to the estate of H. Baird—what relations did you bear?

· "*A.* At that time?

"*Q.* Yes.

"*A.* I was executor.

"*Q.* As such executor were you indebted to the Baird estate?

"*A.* Yes.

"*Q.* Do you know about what the amount of your indebtedness was to the Baird estate, as executor, about February 20th, 1889?

Falk v. Janes.

"*A.* About $1,500 or $1,600.

"*Q.* And about at that time when you were indebted to the estate $1,500 or $1,600, did you make a transfer of that policy to yourself as executor of that estate?

"*A.* I did not make a regular transfer; I just put a letter in the thing, saying that that was collateral for the payment of my indebtedness to the estate of Henry Baird.

"*Q.* And at the same time did you make your note secured by this policy?

"*A.* I do not remember whether I made any note; I did not know the exact amount of my indebtedness, and I thought if I transferred the policy, I would trust them for what was over.

"*Q.* Have you paid any of that indebtedness to the Baird estate since February 20th, 1889, and the time you said you made out a letter and put it in the papers transferring the policy to the Baird estate? .

"*A.* Yes; I have paid some little bills and two or three small legacies—three, I think.

"*Q.* How much did they amount to?

"*A.* I cannot tell; I have no minute of them.

"*Q.* Did they exceed the sum of $200?

"*A.* There was one of $10 and two of $50.

"*Q.* Did you keep this policy with the other papers belonging to the Baird estate since February 20th, 1889, with the exception of the time you allowed Benjamin Albro to have it?

"*A.* Yes, I had it there two years ago; it comes due once in awhile, the premiums, and I take it out so as not to forget it.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"*Q.* And after the payments you made, and on or about February 20th, 1889, you considered you were indebted to that estate about $1,500 or $1,600?

"*A.* Yes.

"*Q.* And thereupon you lodged the insurance policy to the benefit of the estate to pay that indebtedness?

"*A.* I did it a good while before that; I would not say that I kept it there all the time; it was necessary to pay the premiums on it."

On correcting his testimony, he adds to his answer to the question, "When was that policy put among these estate papers?" the following:

"*A.* I put a paper in to show that it was a transfer of the policy to secure the payment of my indebtedness to that estate."

And also to correct and explain his answer to the question, "Did you use any funds of the Baird estate for your own benefit?" by adding:

"*A.* I owed the estate $1,500 or $1,600; I took it and took some bonds; I invested some money of the estate in bonds, and transferred those bonds to some creditor of mine, or disposed of them, I don't remember which."

Given its utmost effect, this testimony shows that Mr. Craig, the executor and trustee of the Baird estate, was indebted to that estate between $1,500 and $1,600, and that he placed this policy, with other papers belonging to the estate, in a tin box, with a memorandum showing that it was collateral for the payment of his indebtedness to the estate of Henry Baird, whatever the deficiency might be, so that if he should drop off they might take that with other securities.

The paper of which he speaks was not produced in evidence, nor was its absence accounted for. The only testimony of its contents is what has already been quoted. It is vague in the extreme. It is merely Craig's opinion of what was the legal effect of the instrument. It did not appear whether the tin box spoken of was used exclusively for the papers connected with the Baird estate.

The question presents itself, assuming the truth of the statement made, whether what was so done by Craig transferred the title of the policy from himself to the estate of Henry Baird? Without examining the question, suggested by the fact that this appears to be an instrument intended to take effect only in case of his death, whether it is not an attempted testamentary disposition of property and wholly defective (*Dexter Savings Bank* v. *Copeland, 77 Me. 263; Ballou* v. *Gile, 50 Wis. 614*); was the transaction one which could pass the title to the policy or charge it with a lien?

It will be noticed that the alleged transfer was as collateral for his indebtedness of $1,500 or $1,600, only part of the amount of the policy, and that he did not part with the possession of the policy.

This policy of life insurance is a chose in action and assignable under our statute. *Rev. 850* § *19* of the Practice act, as amended by *Chapter XII., Laws of 1890 (P. L. of 1890 p. 24).* Such is also the law of New York. *St. John* v. *Insurance Co., 13 N. Y. 31.*

As a rule, it is not necessary that such assignment should be in writing. It may be by parol, if there is a valuable consideration and an unconditional delivery of the policy. *Hutchings* v. *Low, 1 Gr. 246; Allen* v. *Pancoast, Spenc. 68; Winfield* v. *Hudson, 4 Dutch. 255; Morris Canal Co.* v. *Fisher, 1 Stock. 667; Vreeland* v. *Van Horn, 2 C. E. Gr. 137; Kamena* v. *Huelbig, 8 C. E. Gr. 78; Marcus* v. *Insurance Co., 68 N. Y. 625; Greene* v. *Insurance Co., 84 N. Y. 572; Leinkauf* v. *Calman, 110 N. Y. 50.*

The importance of delivery is shown in *Palmer* v. *Merrill, 6 Cush. 282*. This was a suit brought to recover certain sums collected by the defendant, as administrator, on a policy of insurance on the life of his intestate. The insured had obtained a policy of insurance on his own life for $1,000. During his life, and whilst this policy was in force, he endorsed an order thereon addressed to the insurers, requesting them, in case of loss, to pay $400 of the amount, thereby insured, to the plaintiff, which order was duly signed by the insured, and notified to the insurers, but the policy, with this endorsement thereon, remained in the custody of the insured until his decease, and came into the hands of the administrator, with the other effects of the deceased. After the death, and notice to the insurers, plaintiff demanded of them the said $400, which they declined paying, and paid the amount of the policy to the administrator, against whom the plaintiff then brought suit to recover the $400. Chief-Justice Shaw says :

" The question is, whether the case shows an assignment, which vested any interest in this policy, legal or equitable, in the plaintiff. The policy was an executory contract, a chose in action, available as a legal contract only to Spaulding, the insured, and his personal representative.

"According to the modern decisions, courts of law recognized the assignment of a chose in action, so far as to vest an equitable interest in the assignee, and authorize him to bring an action in the name of the assignor and recover a judgment for his own benefit. But in order to constitute such an assignment, two things must concur—(1) the party holding the chose in

32

action must, by some significant act, express his intention that the assignee shall have the debt or right in question, and, according to the nature and circumstances of the case, deliver to the assignee, or to some person for his use, the security, if there be one, bond, deed, note or written agreement, upon which the debt or chose in action arises; and (2) the transfer shall be of the whole and entire debt or obligation on which the chose in action consists, and, as far as practicable, place the assignee in the condition of the assignor, so as to enable the assignee to recover the full debt due, and to give a good and valid discharge to the party liable.

"The transfer of a chose in action bears an analogy, in some respect, to the transfer of personal property. There can be no actual manual tradition of a chose in action, as there must be of personal property, to constitute a lien, but there must be that which is similar—a delivery of the note, certificate or other document, if there is any, which constitute the chose in action, to the assignee, with full power to exercise every species of dominion over it, and a renunciation of any power over it, on the part of the assignor. The intention is, as far as the nature of the case will admit, to substitute the assignee in place of the assignor as owner."

There was no change of possession. Putting the policy in a box, the control of which he retained, was an idle formality. There is no pretence that at the time any one was advised of this pretended transfer to the estate. There was no time afterwards when Craig could not, without the slightest difficulty, have rehabilitated himself with any evidence of ownership he had placed with papers of the estate.

But it is said that there was no necessity for any change of possession, as the alleged transfer was from Craig as an individual to himself as trustee; and counsel, in the brief presented, in support of the position that there was a valid transfer in this case, cites *In re Babcock, 12 N. Y. St. Rep. 841*, but that case only holds that an assignment need not be in writing; that an unqualified delivery is sufficient for the purpose. He also refers to *Throop Grain Co.* v. *Smith, 110 N. Y. 83*, but there the court

held · that the papers constituted a good equitable assignment. He also refers to *Lyon* v. *Lyon, 67 N. Y. 250.* In this case James W. Lyon was a guardian of an infant, and had in his hands as guardian $4,000 belonging to his ward. He made and executed individually, to himself as guardian, a bond conditioned to pay that sum, and a mortgage upon certain premises owned by him to secure the same. He subsequently sold and conveyed the premises, subject to the mortgage, to another. He then brought an action to foreclose the mortgage, making himself and the subsequent purchasers parties defendant. None of the defendants appeared and the judgment was perfected. The premises were sold and bid in by one Wilcox. An order was afterwards made in special term discharging Wilcox, the purchaser, from his purchase and from liability thereon because of defect of title. On appeal to the general term this order was reversed and the purchaser directed to complete his purchase. On appeal to the court of appeals the court expressly say : " Upon this appeal it is not material to consider the question whether the mortgage executed by the plaintiff to himself as guardian was a valid security for money belonging to the infant's estate," and dispose of it on other grounds.

Counsel next refers to the case of *Scrantom* v. *Farmers and Mechanics Bank of Rochester, 33 Barb. 527; S. C. on appeal, 24 N. Y. 424.* The case, as stated in the court of appeals, was this : The plaintiff was executor of an estate and deposited in the defendant bank the sum of about $350 in an account which he opened with the said bank in his name as executor. At the time of the deposit he was indebted to the estate of which he was executor in a sum larger than the amount of the deposit. The money deposited was the proceeds of a claim which the plaintiff had in his individual right against an insurance company on account of a loss by fire. The plaintiff had procured a draft from the company's agent for the amount to be drawn in his favor as executor. He left the draft with the bank for collection and the deposit was out of its proceeds. Shortly before making the deposit, the plaintiff, being insolvent, wrote and signed an instrument purporting to assign to himself and his co-executor, Robins,

who did not act, and never had acted, as executor, all his right
and title to the above-mentioned policy of insurance, but the
paper was not delivered to any one, and it did not appear that it
ever came to the knowledge of his co-executor.

The bank having paid a receiver of plaintiff's estate, plaintiff,.
as executor, brought suit against the defendant bank to recover
the money deposited.

In the court of appeals, Sutherland, J. (at *p. 426*), says: "The
referee did not decide that the assignment of the policy of insur-
ance by plaintiff to himself as executor transferred the money
secured thereby to the estate of T. M. Watson; nor do I think it
was necessary for him so to decide. The draft was made payable
to the plaintiff as executor; was deposited by him with the de-
fendant for collection, and the avails of the draft received by the
defendant and placed to the credit of Henry Scrantom, as execu-
tor.   I think these facts show an intention to apply this money
as an indebtedness to the estate, and an appropriation of it in
part payment of such indebtedness, irrespective of the question
whether he could assign the policy to himself as executor."

Judge Denio, in a dissenting opinion, says, with reference to
the question of the assignment of the policy (at *p. 429*): "The
paper which he made and signed and kept in his own possession
was of no legal force."

These cases furnish no authority for sustaining an attempted
transfer from a person individually to himself in a representa-
tive capacity, while *Schreyer* v. *Holborrow, 26 Hun 468,* is
an express authority against it. The report says: "All the
claims, except one, which were made the subject of investigation
at the trial, were owing from Holborrow, the deceased intestate,
to Schreyer individually.   For the purpose of placing them in a
condition in which they might be joined with another claim held
by Schreyer, in his representative capacity, he executed a formal
assignment of the individual claims to himself as executor. And
upon the basis of that assignment he endeavored to enforce them
against the estate of the deceased intestate, in his favor as
executor."

Mr. Justice Daniels, giving the opinion of the court, considers the case of *Scrantom* v. *Farmers &c. Bank of Rochester*, and holds that an assignment of that nature was not intended to be sustained by that decision, and says, in conclusion : "And the result that such payment was of no legal force seems to follow from the circumstances, that the person executing such a paper, and the individual receiving it are one and the same party, incapable of contracting with or transferring interests from himself as an individual to himself as an executor.

" Because of that inability no title was transferred to Schreyer, as executor, by the assignment which he himself executed individually, and the claims intended to be affected by it were therefore properly rejected by the referee." See, also, *Dexter Savings Bank* v. *Copeland, 77 Me. 263 ; Ballou* v. *Gile, 50 Wis. 614.*

It is not necessary, however, in this case, to hold that a trustee might not transfer his personal securities, to secure his trust estate, by some significant, unalterable act by which the trust was indelibly impressed upon the security—for Craig did nothing except write upon a piece of paper a memorandum which he thought, in case of his death, might avail the estate of Baird in securing from the insurance company what might be due upon the policy. No notice was given to the insurance company ; no notice was given to the heirs of Baird. The insurance company certainly would not, from it, have recognized the Baird estate as owner. If Craig had seen fit to destroy the paper, Baird's estate would have obtained no such right, with reference to the policy, that it could have realized anything therefrom. There could possibly be no evidence to establish any title of the estate to it. The transaction was one entirely with himself in secret. No record was made of it, and it was not communicated to any one. No trust was impressed by the act of Craig upon the policy which the estate could have followed. If this was a valid transfer of the policy in question, nothing more, under similar conditions, can be required than a mental reservation on the part of a person occupying a position of trust and indebted to a trust estate, that he will, if necessary, in the future, appropriate a given security to the discharge of the debt.

I am, therefore, of opinion that the estate of Henry Baird had no lien on the policy, prior to that acquired by the complainant under the proceedings in New York, and shall advise a decree that the money paid into court by the insurance company should be paid—first, to reimburse the defendant Janes for the amount paid by him to the insurance company for premiums, with interest thereon ; second, the payment of the judgment of Frost, and interest thereon ; next, the balance to the defendant Janes.