JENNIE B. WILLIAMS, Admx.

*v.*

EMMA J. CHAMBERLAIN *et al.*

*Filed at Ottawa November 9, 1896—Rehearing denied March 4, 1897.*

1. GIFTS—*delivery of subject of gift is necessary to its validity.* It is essential to the validity of all gifts, whether *inter vivos* or *causa mortis,* that there be a delivery of the subject of the gift or acts equivalent thereto.

2. SAME—*gifts of a testamentary character must comply with Statute of Wills.* Though the intention of a party to make a gift is clear, yet in the absence of actual delivery his acts, to be equivalent thereto, if of a testamentary character, must be in compliance with the Statute of Wills.

3. SAME—*proof of intention, however positive, cannot change title to property.* If, from mistake of law, a party intending to make a gift fails to do those things which the law requires to carry his intention into effect, mere proof of his intention, however positive, cannot change the title to the property.

4. SAME—*courts cannot complete an imperfect gift when the subject has vested in another.* A gift *inter vivos,* incomplete at the death of the donor, the subject of which has vested in his legal representatives, cannot be completed by the courts.

5. SAME—*acts ineffectual to make a valid gift of insurance policy.* A gift of a life insurance policy, payable to the donor's legal representatives, is incomplete where the donor merely attaches to the policy a witnessed assignment thereof to the donee, but retains the policy and assignment himself and gives no notice of the assignment to the company. (*Otis* v. *Beckwith,* 49 Ill. 121, distinguished.)

6. SAME—*incomplete gift of insurance policy is not valid though donor followed the advice of company's agent.* Where acts done by the insured are ineffectual to make a valid gift of his policy by assignment, because he failed to deliver the same or notify the insurance company of the assignment, the fact that he followed the advice and directions of the company's agent, who assured him of the correctness of the course taken, does not operate to validate the gift.

*Chamberlain* v. *Williams,* 62 Ill. App. 423, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

PECK, MILLER & STARR, for appellant:

Delivery is essential to a gift.    *Telford* v. *Patton*, 144 Ill. 611; *Barnum* v. *Reed*, 136 id. 388; *Bovee* v. *Hinde*, 135 id. 137; *Richardson* v. *Richardson*, 148 id. 563; *Byars* v. *Spencer*, 101 id. 429; *Hoig* v. *Adrian College*, 83 id. 267; *Baskett* v. *Hassell*, 107 U. S. 602; 108 id. 267; *Trough's Appeal*, 75 Pa. St. 115; *Palmer* v. *Merrill*, 6 Cush. 282; *Foster* v. *Gile*, 50 Wis. 603; *Bank* v. *Copeland*, 77 Me. 263; *Flanders* v. *Blandy*, 45 Ohio St. 108; May on Insurance, (3d ed.) sec. 390; 2 Kent's Com. 438, 439; *Young* v. *Young*, 80 N. Y. 422; *Trimmer* v. *Danby*, 25 L. J. Ch. 424; 8 Am. & Eng. Ency. of Law, 1316.

To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee irrevocably. *Barnum* v. *Reed*, 136 Ill. 398.

Out of an imperfect gift no trust will be created. *Clarke* v. *Lott*, 11 Ill. 105; *Badgley* v. *Votrain*, 68 id. 25; *Wadhams* v. *Gay*, 73 id. 415; *Barnum* v. *Reed*, 136 id. 388; *Milroy* v. *Lord*, 4 DeG., F. & J. 264; *Richardson* v. *Delbridge*, L. R. 18 Eq. 11; *Hayes* v. *Insurance Co.* L. R. 8 Irish, 139; *Warriner* v. *Rogers*, L. R. 16 Eq. 340; *Antrobus* v. *Smith*, 22 Ves. Jr. 39; *Jones* v. *Lock*, L. R. 1 Ch. App. 25; *Moore* v. *Moore*, 43 L. J. Ch. App. 623; *In re Breton's Estate*, L. R. 17 Ch. 416; *Young* v. *Young*, 80 N. Y. 422.

JOHN M. GARTSIDE, and FRANK P. LEFFINGWELL, for appellees:

No one but the insurer can raise the question that the insured had in his lifetime assigned his life insurance policy to one who had not an insurable interest.    *Martin* v. *Stubbings*, 126 Ill. 387 ; *Benefit Ass.* v. *Blue*, 120 id. 125; *Crawford's Appeal*, 11 P. F. Smith, 53; *Insurance Co.* v. *Flack*, 3 Md. 341; *Insurance Co.* v. *France*, 94 U. S. 501.

Any one may insure his own life and assign the policy to whom he will, if the transaction is not a mere cover for a wager.    *Martin* v. *Stubbings*, 126 Ill. 387; *Insurance Co.* v. *Schaefer*, 94 U. S. 457; *Langdon* v. *Insurance Co.* 14 Fed. Rep. 272.

There was a delivery to the donees. Acceptance by the donees completed the delivery. Their acquiescence was acceptance. *Otis* v. *Beckwith*, 49 Ill. 121; *Walker* v. *Walker*, 42 id. 311; *Masterson* v. *Cheek*, 23 id. 73; *Knapstein* v. *Tennette*, 57 Ill. App. 570; *McElroy* v. *Hiner*, 133 Ill. 159; *Bryan* v. *Wash*, 2 Gilm. 569; 2 Kent's Com. 438, (13th ed.) note *b;* 2 Rolle's Abr. 62; 14 Viner's Abr. 123.

Manual delivery was not necessary. The intention governs. *Otis* v. *Beckwith*, 49 Ill. 121; *Walker* v. *Walker*, 42 id. 311; *Bryan* v. *Wash*, 2 Gilm. 569; *Reed* v. *Douthit*, 62 Ill. 349; *Masterson* v. *Cheek*, 23 id. 73; *Weber* v. *Christen*, 121 id. 96; *Knapstein* v. *Tennette*, 57 Ill. App. 570; *McElroy* v. *Hiner*, 133 Ill. 159; *Miller* v. *Meers*, 155 id. 284; *Chowne* v. *Baylis*, 31 Beav. 351; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329; *Ellis* v. *Secor*, 31 Mich. 185; *Reybald* v. *Reybald*, 8 Harr. (Pa.) 308; *Crawford's Appeal*, 11 P. F. Smith, 53; Hine & Nichols on Life Policies, 33-36.

Delivery to the donees was not necessary. The gift was made under seal. *Otis* v. *Beckwith*, 49 Ill. 121; 2 Kent's Com. 438, (13th ed.) note *b;* Comyns' Digest, title "Biens."

Mr. JUSTICE CARTER delivered the opinion of the court:

This case arose in the probate court of Cook county upon the separate petitions of appellants, filed in that court and consolidated and tried together, for the delivery to the petitioners, respectively, of two policies of insurance upon the life of Frank H. Williams, deceased,— one for $10,000 claimed by petitioner Emma J. Chamberlain, and the other for $5000 claimed by petitioner Maria W. Sheppard. The petitioners were sisters of the deceased, and they claimed the policies as gifts from their brother. Williams died intestate on November 23, 1891, leaving Jennie B. Williams his widow, (who was appointed administratrix of his estate,) and Marion Ethel, a little girl, his only child. The policies bore date, respectively, March 1 and March 13, 1884, and were payable to his legal representatives. They were found after

his death in a tin box kept by him in the vault at the wholesale house of Marshall Field & Co., where he was employed. Attached to the $10,000 policy was the following assignment:

"In consideration of two dollars to me paid, I do hereby assign, transfer and set over unto Emma J. Chamberlain, (my sister,) of Croton Falls, New York, her executors, administrators and assigns, policy number 170,501 in the Connecticut Mutual Life Insurance Company, dated the first day of March, A. D. 1884, in the sum of $10,000, together with any and all profits due or to become due thereon.

"Witness my hand and seal at Chicago, Illinois, this fifth day of March, A. D. 1884.    FRANK H. WILLIAMS. [L. S.]

"In presence of Henry M. Curtis.
        (See special notice endorsed hereon.)"

A similar assignment to Mrs. Sheppard was attached to the other policy. The "special notice" mentioned as endorsed on the assignment was as follows:

"The company offers this form of assignment of policies solely for the convenience and accommodation of its members. It has no control of assignments, cannot become responsible for them, and must reserve all question for impartial action when contracts become due and payable. All claims under assignments are subject to satisfactory proof of the assignee's interest in the life insured, and to all defenses against the obligations of the policies. It is desirable that the transfer be annexed or attached to the policy. Duplicates or certified copies of assignments may be sent to the company to be noted and filed for the purpose of reference and information.

                    JOHN M. TAYLOR, *Vice-President.*"

The sixth paragraph of the conditions of the policies provides: "That no assignment of this policy shall be valid unless made in writing, endorsed thereon; and any claim against this company arising under this policy, made by any assignee, shall be subject to satisfactory proof of interest in the life insurance, in due form, and to any breach of the conditions of this contract by any of the parties thereto, whether such breach exists prior or subsequent to such assignment; and such proof of interest

shall be a condition precedent to any right of action on this contract by or on behalf of such assignee, and this company shall in no case be responsible for the validity of any assignment."

No question appears to have been made by the company as to its liability to pay, and by agreement of the parties and order of the probate court the policies were delivered to the American Trust and Savings Bank for collection, and for said bank to hold the proceeds thereof in trust for the parties who should be found entitled.

From the evidence it appeared that Curtis, who witnessed the assignment, was an agent of the insurance company, and when Williams received the $10,000 policy he asked Curtis how he could make it payable to a particular person; "that Curtis told Williams it could be done by an assignment, and handed Williams the blank form of assignment that was used and showed him how to fill it out; that Williams then stated to Curtis that he felt under obligations to his sisters; that they had done a great deal for him; that he felt indebted to them for what they had done for him in years past and he wanted to provide for them as they had not any amount of means, and he wanted them to have his life insurance in case of his death; that Curtis then told Williams all he would have to do in such case was to fill out the assignment, making the policy run to them, and attach it to his policy; that Williams then filled out the blanks and signed the assignment, and he, Curtis, witnessed it; that when the second policy, the one for $5000, came, substantially the same thing was repeated, Williams stating the same reasons for so doing; that the policy in each case was right there on the desk before them when the conversation was had and the assignment made and witnessed; that Curtis told Williams where to attach the assignments, although he could not testify that he saw them attached by Williams; that afterwards, on several occasions, after Williams had trouble in his family relations,

Williams told Curtis he was glad that he had his insurance assigned to his sisters, so that they could get it in case of his death."

It seems, from the evidence, that Williams and his wife were estranged, and that he attached the blame to her relatives.   Several witnesses with whom he boarded at different times between the date of the policies and his death, testified to conversations with him,—some of them but a few months, only, before his death,—and in which he stated that he had fixed his life insurance so that his two sisters (the petitioners) would get it; that he had every confidence that they would see that his little girl was well taken care of and educated; that he had informed his sisters of the assignments to them and that they understood his wishes, and he had no fear that they would not carry them out; that he did not want his wife to handle the money on account of her relatives; that if they handled it there would be nothing left for his child when she would need it.   He told these witnesses that the amount of his insurance was $25,000, and it seems that this amount was made up of the $15,000 in question in this case and $10,000 more, which had been made payable directly to his sisters.   The two policies here in question were payable to his legal representatives, as before stated, and neither the policies, nor any assignment or memorandum thereof, had ever been delivered to the petitioners, nor had any notice been given to the company of any such assignments, nor had any note thereof been entered upon the company's books.   It is claimed, however, by the petitioners, that though insisting that no such delivery or notice was necessary, the evidence showed that the petitioners were informed of the assignments and accepted or acquiesced therein, and that the company had notice of the assignments through its agent, who was a witness thereto, and who advised Williams as to the manner in which he could accomplish his object.

The probate court granted the prayer of the petitions, but on appeal to the circuit court, and on a hearing there, this order was reversed and the two policies and proceeds thereof were adjudged to belong to Williams' estate. The decree of the circuit court was reversed by the Appellate Court on appeal, it being there determined, as it had been in the probate court, that the petitioners were entitled. The case is now before us on appeal by the administratrix.

Question is made as to the admissibility of some of the testimony, but as we have arrived at the same conclusion reached by the learned chancellor of the circuit court, even considering all of the evidence, no necessity is seen for discussing the question whether such testimony was properly received or not.

It seems to have been considered by the Appellate Court that the case is within the reasoning, and therefore within the ruling, of this court in *Otis* v. *Beckwith*, 49 Ill. 121. We think, however, there is a substantial difference between the two cases. In the *Otis-Beckwith case* the holder of the policy attached to it an assignment to a trustee for the benefit of three of his children, and notified the company of the assignment in trust, and such assignment was noted on the company's books. He also notified the trustee who accepted in writing the trust, which written acceptance the assured enclosed and preserved with the policy. In that case, in delivering the opinion of the court, Mr. Chief Justice BREESE said (p. 132): "In this case the assignment was of a chose in action, which the law did not require should be recorded; but the debtor party had notice of the assignment and entered the fact on the books of the company, and the assignee accepted the assignment in writing. Was delivery of the policy to the assignee essential to perfect the assignment? Was not the gift of this policy as complete as the nature of the thing and subject admitted? The policy was, in fact, assigned, and the aid of the court

was not invoked to compel an assignment. All had been done by the assignor that was incumbent on him to do. He notified the assignment to the assignee and attached it to the policy, retaining both in his own possession. The facts of the case do not differ essentially from the facts in the case of *Fortescue* v. *Barnett*, 3 Mylne & Keen, 36." And in distinguishing the case from another referred to, he further said (p. 133): "This case differs from the one under consideration only in this: that in the case reported the assignment of the policy was delivered to the assignee, the policy remaining with the donor. Here the assignment was not in fact delivered, but equivalent acts were done by the donor and assignee, the one notifying the assignee of the assignment and trust, and his written acceptance thereof, and notice to the insurance company, which was noted on their books." It is true that in the argument in the opinion much stress was laid upon the intention of the donor as the controlling element, but what was said in this regard must be read with reference to the case before the court. The intention without accompanying acts would avail nothing.

We may regard it as clearly established that it was Williams' intention that the petitioners should have this insurance, but if, from mistake of law, he failed to do those things which the law requires to carry his intention into effect, mere proof of his intention, however positive and convincing, cannot change the title to the property. Undoubtedly the intent is of vital importance, and as was said in *Weber* v. *Christen*, 121 Ill. 91, in reference to the delivery of a deed, "the crucial test, in all cases, is the intent with which *the act or acts relied on as the equivalent or substitute for actual delivery were done.*" It was said also in the *Otis-Beckwith case* (p. 136): "We have examined the case thus far with reference alone to the acts and intention of the intestate, and from them we are satisfied that he did all that was expected for him to do in order to complete the transfer of the policy." Whatever may have

been the intention of the deceased, if his acts in undertaking to dispose of the policies in question are of a testamentary character they cannot prove effectual, there being no compliance with the Statute of Wills. *Comer* v. *Comer*, 120 Ill. 420.

It was not intended by anything said in the *Otis-Beckwith case* to change the rule, which we regard as settled law, that it is necessary to the validity of all gifts, whether *inter vivos* or *causa mortis*, that there be delivery of the subject of the gift or acts equivalent to a delivery. We consider it unnecessary to review to any considerable extent the authorities on this question, but reference may be had, among others, to the following cases: *Telford* v. *Patton*, 144 Ill. 611; *Barnum* v. *Reed*, 136 id. 388; *Bovee* v. *Hinde*, 135 id. 137; *Richardson* v. *Richardson*, 148 id. 563; *Byars* v. *Spencer*, 101 id. 429; *Hoig* v. *Adrian College*, 83 id. 267; *Baskett* v. *Hassell*, 107 U. S. 602; 108 id. 267; *Trough's Appeal*, 75 Pa. St. 115; *Palmer* v. *Merrill*, 6 Cush. 282; *Foster* v. *Gile*, 50 Wis. 603; *Dexter Savings Bank* v. *Copeland*, 77 Me. 263; *Flanders* v. *Blandy*, 45 Ohio St. 108; May on Insurance, (3d ed.) sec. 390; 2 Kent's Com. 438, 439; *Young* v. *Young*, 80 N. Y. 422; *Trimmer* v. *Danby*, 25 L. J. Ch. 424; 8 Am. & Eng. Ency. of Law, 1316.

In *Telford* v. *Patton, supra*, it was said (p. 619): "There are three requisites necessary to constitute a *donatio causa mortis:* (1) The gift must be with a view to the donor's death; (2) it must have been made to take effect only in the event of the donor's death by his existing disorder; (3) there must be an actual delivery of the subject of the donation. * * * It is essential to a donation *inter vivos* that the gift be absolute and irrevocable; that the giver part with all present and future dominion over the property given; that the gift go into effect at once, and not at some future time; that there be a delivery of the thing given to the donee; that there be 'such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.'"

In *Baskett* v. *Hassell*, 107 U. S. 609, in speaking of certain decisions of the Supreme Court of Tennessee as, in meaning, in accord with the general doctrine, it was said: "A *donatio mortis causa* must be completely executed, precisely as required in the case of gifts *inter vivos*, subject to be divested by the happening of any of the conditions subsequent,—that is, upon actual revocation by the donor, or by the donor's surviving the apprehended peril or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts *mortis causa* and *inter vivos.* On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will. This statement of the law is, we think, correctly deduced from the judgments of the highest courts in England and in this country."

But, it may be asked, what acts are equivalent to or may be held a sufficient substitute for actual delivery? In the *Otis-Beckwith case* a valid trust was created. The policy was assigned to the trustee, the trustee notified, and he accepted the trust and the written evidence of his acceptance was preserved with the policy, a copy of the assignment was given to the insurance company and the assignment was noted on its books, and it was there said that the donor had done all he could do to complete the transfer. It could not, however, be so said in the case at bar. Whether viewed as an attempted assignment or creation of a trust it was incomplete. Williams complied with the condition of the policy requiring the assignment to be in writing and endorsed on the policy, but though he was informed by the "special notice" endorsed on the company's form of assignment which he used, that "duplicates or certified copies of assignments may be sent to the company to be noted and filed for the

purpose of reference and information," he took no step in this direction toward the completion of the transfer.

For the purpose of the argument we regard it as immaterial that the policy did not, in any of its conditions, undertake to make the validity of any assignment of it depend on notice thereof to the company. It must be borne in mind that (not regarding the act as of a testamentary character) Williams was undertaking to make an assignment of the policy as a gift, and at the same time, whether for convenience or other reasons, to retain it in his possession. By all the authorities, to make the gift a valid one he should, if he retained the policy, have performed such other acts looking to the completion of the gift as in cases of actual delivery, as would, under the circumstances, have been equivalent to or a substitute for such actual delivery. But he did nothing more than execute the written assignment, have it witnessed and attach it to the policy. It is true it appears from the testimony that he said he had talked the matter over with his sisters, the petitioners, and it was understood by them; but such loose statements as these cannot be regarded as equivalent to a delivery of the policy or assignments to and an acceptance thereof by them.

Nor can the mere fact that Curtis, who was an agent of the company, witnessed the assignments and furnished blanks of the company therefor, be held equivalent to the sending of copies of such assignments to the company and an entry of the same upon its books, or that Williams so regarded those facts. To notify the debtor party to a non-negotiable written contract in the manner made known by him as satisfactory, might, in the absence of the delivery of the assigned contract to the donee, well be regarded by a court of equity as one of the most important steps in the transfer in determining whether or not, by the acts of the parties, an equivalent of or substitute for actual delivery appeared. Considering the alleged gift as a gift *inter vivos*, it was still revo-

cable by the donor, and being revocable it was incomplete at the time of his death, and as the courts cannot complete an imperfect gift, the subject of it vested, with the rest of his chattels, in his administratrix.

Nor does the evidence show that Williams created a trust or constituted himself the trustee of the petitioners, and so held possession of the policies for them. That he might have done so is beside the question. It is sufficient that he did not do so, and we find no evidence in the record that he made the attempt. From a mere imperfect gift a trust cannot be deduced. (*Badgley* v. *Votrain*, 68 Ill. 25.) Suppose the policies had been endowment policies, payable during the life of Williams to himself. Would it be contended that a suit could have been maintained against him by the petitioners, upon the evidence in this record, for the policies, or the proceeds after their collection? And if not against him, then why in this case against his administratrix?

The most that can be said, we think, is, that Williams intended to make a gift of the proceeds of these policies, or perhaps the policies themselves, to the petitioners, and took certain steps to accomplish his purpose, but left the matter incomplete. It cannot be determined from the evidence whether he retained the policies and assignments in his possession, and refrained from all acts showing an intent to deliver them and to thus complete the gifts, in order that he might, if he thought advisable, change his mind and act as future exigencies might require, or whether he was mistaken in the law and supposed that he had done all that was required to make the gifts complete. But in either case the petitioners are without remedy.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*