# Farmers and Merchants State Bank of Marion, Iowa, v. W. H. Gleason.

1. NEGOTIABLE INSTRUMENTS—*When Holder of, May Recover.*—One who takes negotiable paper that is transferable by delivery acquires an absolute property in it, and may recover upon it, although the paper was

fraudulently put in circulation or had been stolen, provided he takes it in good faith for a valuable consideration.

2. SAME—*Delivery of, Necessary to Give Title.*—Notwithstanding the fact that a certificate of deposit is by its terms made payable, at the request of the depositor, to persons other than himself, it is the property of the depositor, and not the property of the payees named, and continues to be his property until delivered by him to the payees.

Assumpsit, on a certificate of deposit. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1897. Reversed and remanded. Opinion filed April 8, 1898.

BARGER & HICKS, attorneys for appellant; JAMISON & SMYTH, of counsel.

It is well settled that where a certificate of deposit is transferred when overdue, the purchaser takes it subject to all defenses that could have been made, had it not left the hands of the payee. Bank of Peru v. Farnsworth, 18 Ill. 563; Coye v. Palmer, 16 Cal. 158; Tripp v. Curtenius, 36 Mich. 494; First Nat. Bank v. Security Nat. Bank, 34 Neb. 71; Carey v. McDougald, 7 Ga. 84; Morey v. Wakefield, 41 Vt. 24; Herrick v. Wolverton, 41 N. Y. 581.

A certificate of deposit in the form of the one in question is a negotiable instrument. Laughlin v. Marshall, 19 Ill. 390; Bank of Peru v. Farnsworth, 18 Ill. 563; Huse v. Hamblin, 29 Ia. 501; Drake v. Markle, 21 Ind. 433.

Mere deposit of a depositor in a bank in the name of another, the act being entirely between the bank and the depositor, in which the other person is not in any manner a party, will not of itself pass title to the money. Telford v. Patton, 144 Ill. 611; Branch v. Dawson, 36 Minn. 193; Beaver v. Beaver, 117 N. Y. 421; Flanders v. Blandy, 45 Ohio St. 108; Brunn v. Schuett, 59 Wis. 260; Young v. Young, 80 N. Y. 422; Martin v. Funk, 75 N. Y. 134; Minor v. Rogers, 40 Conn. 512; Marcy v. Amazeen, 61 N. H. 131; Scott v. Berkshire County Sav. Bank, 140 Mass. 157.

A father in his lifetime conveyed land to his sons and took back notes payable to his daughters, but retained the possession of them himself and did not deliver them to his

daughters.  It was held that so long as he retained the possession of the notes they were his own property.  Fanning v. Russell, 94 Ill. 386.

A father invested in bonds for the benefit of his daughter who lived at a distance, but at the request of the daughter kept the bonds in his own possession and under his control. The father collected the interest on the bonds and remitted it to the daughter.  He also sent her a letter stamped as a contract to the effect that if she did not want the bonds he would pay her their value.  Held, that the title never passed from the father to the daughter, as a delivery was essential to complete the gift.  Flanders v. Blandy, 45 Ohio St. 108.

A father who held a note and mortgage executed by his daughter to him, signed a release thereof and placed it with the note and mortgage in his safe.  All the papers remained in the safe until his death.  Held, that the release never took effect for want of delivery.  Brunn v. Schuett, 59 Wis. 260.

A executed an assignment of certificate of deposit to B and gave it to his attorney, saying:  "It is for B."  The attorney kept it in his safe and did not deliver it to B until after A's death.  Held, the gift was void for want of delivery.  Scott v. Lauman, 104 Pa. St. 593.

The following cases decide that a gift which does not contemplate a delivery of the property by the holder to the donee until after the death of the donor can not be sustained as a gift *inter vivos*.  Allen v. Polereczky, 31 Me. 338; Craig v. Kittredge, 46 N. H. 57; Phipps v. Hope, 16 Ohio St. 586.

Where a party made a deposit in bank in the name of another, but never delivered the certificate thereof to such other person, and made no declaration of trust at the time or afterward, in an action of replevin by such person against the administrator of the depositor, the court instructed the jury that, if they believed from the evidence such party deposited the money in the name of and for the use and benefit of the plaintiff, and took from the bank a certificate of deposit payable to the plaintiff, then the plaintiff was

entitled to recover. Held, that the instruction was erroneous, as ignoring the question of delivery and leaving it to the jury to find whether or not the deposit was made for the use of the plaintiff, in addition to and separate from the finding as to whether or not such a deposit was made in the name of the plaintiff, there being no proof of a deposit for her use and benefit in addition to or separate from the mere fact that the plaintiff's name was inserted in the certificate, and also for the reason that the instruction presented the question whether or not a trust was established, when the real question was whether or not there was a gift to the plaintiff. Telford v. Patton, 144 Ill. 611.

Where a bill or note is lost, or stolen, or obtained from the true owner by fraud, payment by the maker will be good if he did not have notice of the circumstances. If he has notice, however, he pays at his peril if it shall turn out that the holder had no title. Lovell v. Martin, 4 Taunt. 799.

No man can acquire a right by his own fraud to sustain an action in any court. An action on a note obtained by fraud may be defeated on that ground if the defendant can show that the plaintiff obtained the note by his own fraudulent act, although the defendant may be liable to pay the note to the true owner. President, etc., City Bank of New Haven v. Perkins, 29 N. Y. 554.

While it may be true that a defendant who owes a debt has no interest beyond the *bona fides* of the holder, yet if he has notice of a claim made by another, it is his duty to know that he is paying to the rightful owner. Talman v. Gibson, 1 Hall (N. Y.), 308; Houghton v. McAuliffe, 26 Howard Pr. 270.

Where a negotiable paper has been lost or stolen, or obtained by duress, or put in circulation by fraud, proof of these circumstances will put upon the plaintiff the burden of showing that he purchased such paper *bona fide* and for a valuable consideration. Beltshoover v. Blackstock, 3 Watts, 20.

Where bad faith is alleged, or that the plaintiff purchased

with knowledge, courts will inquire whether the party suing is a trustee for another, and whether he has good title. Ellicott v. Martin, 6 Md. 509.

Freedom of will and good faith are as essential to the validity of a gift as in other contracts, and a gift should be made in the exercise of a proper mental capacity, as the giver receives no benefit from the transaction. Amer. & Eng. Ency. of Law, Vol. 8, 1309; Richardson v. Hadsall, 106 Ill. 476; Nolen v. Harden, 43 Ark. 307.

Delivery of the property in question, with the intention to give, is absolutely necessary to the validity of the gift. The owner must part with his dominion and control over the thing given before the gift can take effect. There must be an actual and positive change of possession. People v. Johnson, 14 Ill. 342; Amer & Eng. Ency. of Law, Vol. 8, 1314.

Clark Varnum, attorney for appellee.

There are some law points either statutory or so well settled by decisions extending over a period of hundreds of years in all courts that there can be no dispute over them. A few of these are:

That a certificate of deposit is a promissory note; that any such instrument may be assigned by indorsement thereon and the title shall absolutely vest in the assignee; that the assignee may maintain suit the same as the payee; that it is immaterial when the assignment or transfer is made, unless the maker of the note had a defense against the original payee; that there are only a few defenses as against the original payee, namely: payment, want or failure of consideration, usury, and actual fraud or circumvention practiced upon the maker to obtain the execution of the note; that by the execution of a note the maker conclusively admits the existence of the payee; the capacity of the payee to indorse; that he (the maker) is the party primarily liable; that he will pay in accordance with the tenor of the instrument, etc.

The maker of the note is by the execution of the instrument itself, estopped and conclusively precluded from deny-

ing any of these matters; see Illinois Statutes and any text book.

The maker of a note is also conclusively precluded from denying that the payee is the real party in interest. Blacker v. Dunbar, 108 Ind. 217; Keyser v. Simmons, 16 Fla. 268; Johnson v. Conklin, 119 Ind. 109; Rogers v. Place, 29 Ind. 577.

The maker of a note can not make a valid defense against recovery by an indorsee on the ground that the possession of the note was obtained from the payee by fraudulent representations, although the indorsee had knowledge of such fraudulent representation when he received the note. Prouty v. Roberts, 6 Cushing, 19.

" The defendant stands here as a mere volunteer in behalf of others not before the court, and can make no claim on their account. Confessedly he owes the debt. He has no defense of his own at all on his own account, and should he succeed in defending on the grounds on which the litigation seems to have thus far to have proceeded, he may escape the payment of a just debt altogether." President, etc., City Bank of New Haven v. Perkins, 29 N. Y. 554; see, also, Gage v. Kendall, 15 Wend. 640.

Where one receives money as the property of a particular person or corporation, he can not question the title of such person or corporation to such money. He is estopped and conclusively precluded from so doing. Morris v. State, 47 Texas, 583; Cairns v. O'Bleness, 40 Wis. 469; McKey v. Monterey Co., 51 Cal. 275; Board of Trustees of New Iberia v. Serrett, 31 La. Ann. 719.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee, as indorsee of a certificate of deposit issued by the appellant, brought suit thereon, and recovered judgment against the appellant for the full amount thereof ($9,769.20), upon the verdict of a jury returned under a peremptory instruction by the court. The certificate, introduced in evidence, was as follows:

"Certificate of Deposit.

Farmers and Merchants State Bank.            No. 1180.

Marion, Iowa, Aug. 31, 1895.

Laura L. Davis and James C. Davis have deposited in this bank nine thousand dollars ($9,000), payable to the order of themselves in current funds three months after date, on the return of this certificate, properly endorsed, with interest only until maturity at four per cent per annum.

Not subject to check.

E. J. Esgate, Cashier.

(Endorsements :)

Laura L. Davis,

James C. Davis."

The general issue and two special pleas were interposed to the action, and the case went to trial upon issues formed by replications to the plea of the general issue and the first special plea—a demurrer to the second special plea having been sustained. The material parts of such first special plea, were, as set forth in the abstract of record, as follows :

"That the execution of the writing or certificate of deposit, styled in the declaration a promissory note, was obtained by the use of fraud and circumvention upon one George A. Patterson; that is to say, that the said George A. Patterson before and at the time of the execution of the said certificate of deposit, to wit, August 31, 1895, had on deposit in the Farmers and Merchants State Bank of Marion, Iowa, defendant herein, the sum of nine thousand dollars ($9,000) and interest, payable to himself; that the payees of the certificate of deposit sued on, to wit, Laura L. Davis and James C. Davis, were respectively a daughter and grandson of the said George A. Patterson, and resided and made their home with the said George A. Patterson; that for some time previous to the execution of this certificate of deposit, to wit, August 31, 1895, the said George A. Patterson had become very aged, feeble, childish, and without any will power of his own whatever, mentally unsound and insane, and had been under the charge, care, control and supervision of the said Laura L. Davis and

James C. Davis, and that previous to the execution of the said certificate of deposit sued on, the said George A. Patterson, in his weak, feeble and insane condition, had implicitly obeyed and followed any commands, instructions or requests of the said Laura L. Davis and James C. Davis, and that on, to wit, the 31st day of August, 1895, the said Laura L. Davis and James C. Davis, fraudulently taking advantage of the said George A. Patterson and of his weak, feeble, childish, aged and insane condition, did force, coerce, wrongfully induce and command the said George A. Patterson to instruct the cashier of the Farmers and Merchants State Bank of Marion, Iowa, defendant herein, to change the payee in the said certificate of deposit from George A. Patterson to Laura L. Davis and James C. Davis, and the same was done without any consideration; and the defendant says that the certificate or instrument sued on was never in fact delivered to said Laura L. Davis and James C. Davis, and the said Laura L. Davis and James C. Davis never had possession thereof until after the death of said George A. Patterson, which occurred at Marion, Linn county, Iowa, on the 20th day of November, 1895; that the said George A. Patterson never in fact delivered said certificate or instrument sued on, or directed the same to be delivered to the said Laura L. Davis and James C. Davis, but after his death said Laura L. Davis and James C. Davis took possession of the same either from the body of the said George A. Patterson, or from his desk or other depository where he kept his papers; that afterward, and on or about the 1st day of January, 1896, said Davises, for the purpose of cheating and defrauding said estate, and the other heirs of the said George A. Patterson, made a pretended transfer to one W. H. Gleason, plaintiff herein; that said Gleason paid nothing for said certificate; that the same was wholly without consideration, and that all the title he acquired, if any, to said certificate, or instrument sued on, was acquired after the same had become due, and with full knowledge of all the foregoing facts, and that he holds the same in secret trust from the said Davises and their attorneys.    And

because of said fraud and coercion on the part of the said Davises in obtaining the issuance by the defendant herein of said certificate of deposit in their name, and for the want of consideration therein, and because of the manner in obtaining possession thereof, the defendant says that the plaintiff herein has no right, title or interest in and to said certificate of deposit sued on, but the same is the property of the estate of George A. Patterson, deceased. And this the defendant is ready to verify."

At the trial, after the appellee had made out a *prima facie* case and rested, the appellant showed by the bank cashier, that on November 12, 1895, the said George A. Patterson brought into the bank two certificates of deposit —one for $9,000 and the other for $1,512.83—which had been previously, on August 31, 1895, issued by the bank to him in his own name, and that at his request the certificate in question was made out and delivered to him in place of the original one for the same amount—dating it back to the same date as the original one so as "to simplify the matter."

At that point, the question arose whether further evidence in support of the special plea would be received by the court, and upon specific offers of such evidence being made it was held to be inadmissible, and the jury were instructed to find for the plaintiff for the sum claimed.

Whether there was error or not in such proceedings, is the principal question before us.

In support of its plea, appellant offered to show, among other things, that from the time of the making of the certificate and its delivery to Patterson on November 12, 1895, until the death of Patterson, some eight days afterward, he, Patterson, kept possession of the certificate and had it in his desk under lock and key; that on the afternoon of the day of his death the desk was broken open by the persons named as payees in the certificate, and the possession of the certificate, with other valuable papers, taken by them and retained by them until after its maturity, and that after its maturity, and on or about January 1, 1896,

appellee received the same from them, without considera-
tion, and that he holds the same in trust for their benefit.

The rule is that one who takes negotiable paper that is
transferable by delivery, acquires an absolute property in it,
and may recover upon it, although the paper was fraudu-
lently put in circulation, or had been stolen, provided he
takes it in good faith for a valuable consideration. 2 Par-
sons on Notes and Bills (2d Ed.) 42.

But the plea under consideration explicitly negatived
both elements of good faith and valuable consideration
exercised and paid by appellee.

It was proved by the testimony of the bank cashier,
admitted and not struck out, that Patterson's money was
the consideration for which the bank drew and delivered
the certificate to Patterson.

Contrary to the contention of appellee, we must hold
that notwithstanding the certificate was by its terms made
payable, at Patterson's request, to persons other than him-
self, the certificate was the property of himself, and not the
property of the named payees, and continued to be his
property until delivered by him to the payees.

It is analogous to the case of one drawing a check paya-
ble to a third party out of funds in bank, and request-
ing and obtaining the bank to certify it as good. In such
a case there would be no privity of contract between the
bank and the payee until after delivery of the check to
the payee, and until such delivery the payee could not
maintain an action against the bank upon the check.

The case of Clarke v. Boyd, 2 Ohio, 56, was one that
involved the question of the delivery of a promissory note.
It there appeared that one Pierce, the assignor of the note,
had been some time deceased, and that, at the time of his
death, the note was found among his papers, indorsed by
him to the plaintiff; that his executors, supposing the note
to be the property of the plaintiff, delivered it to him, and
the court said: "The assignment made by the assignor
while the note remained in his possession, and where no
contract of sale was proved, was a mere nullity. It was in

his own power, and could at any time be legally erased. It gave no interest or title to the assignee, and when Pierce died he was the absolute owner of the note notwithstanding the assignment.    The right vested, by his death, in the executors, and could only be assigned by them.    The plaintiff acquired no more right by a delivery from the hands of the executors, than he could have acquired had they delivered him a note, payable to the testator, without any indorsement."

So here, in the case at bar, the certificate, upon the theory of the plea which, upon this record, we are bound to consider as proven, was in the power of Patterson, and up to the moment of his death he had the right to surrender it to the bank and demand its payment to himself.    The mere fact that at his request it had been drawn payable to third persons gave to them, in the absence of any contract right in them, no interest or title to it, and when Patterson died he was the absolute owner of it, notwithstanding its terms.    And so much the more is this true, if, according to the plea, the payees wrongfully obtained possession of the certificate, after the death of Patterson, from his body or desk.

In Fanning v. Russell, 94 Ill. 386, the question arose whether, as against creditors, six notes given by the grantees of certain lands, as a part of the consideration for the conveyance of the lands to them, should be treated, in a certain aspect of the case, as the property of the grantor. The grantor had six daughters, and he took from the grantees their six promissory notes for $1,500 each, payable to his respective daughters, by name, as a part of the consideration of the conveyance.    The notes were delivered by the grantees who made them to the grantor—and not to the payees, his daughters—and were never delivered by him to the payees.    In discussing the question, the court said :

"No doubt it was the intention of the father that his daughters should each have the benefit of one of the notes, *  *  *  but so long as he retained the possession of the

notes they were his own property, notwithstanding they were made payable to his daughters. Until the notes were delivered (to the daughters) it was his privilege to change his purpose and withhold the gifts he may have intended to make.

"The daughters had no vested interest in the gifts their father may have proposed to make them, and of course could not compel a specific performance. * * * So long, therefore, as Sampson Fanning retained these notes in his possession, they were absolutely his property." And the conclusion was, that the notes, together with other property, constituted a fund remaining in the grantor applicable to the payment of certain of his indebtedness.

And, with reference to one of appellee's arguments, it was there said, also, that the obligation of the makers of the notes was absolute to pay the notes, whether in the hands of the payees or Sampson Fanning, the grantor, from whom the consideration for them came.

The case of Telford v. Patton, 144 Ill. 611, was in fact and in principle very close to the one at bar. There, one Telford deposited in a bank $2,600, and received therefor a certificate of deposit stating that L. J. Patton (meaning a Miss Livonia J. Patton) had deposited in said bank said sum payable to the order of himself (meaning herself) upon return of the certificate, one year after date, etc.

Telford died about eight and one-half months after the issuance and delivery to him of the certificate, without having delivered the certificate to Miss Patton, or apprising her in any way of its existence, or of his intentions concerning it, or concerning her in connection with it, or the money represented by it; and so far as was known, the certificate never left Telford's possession from the day of its issuance to the date of his death, but was found among his effects in possession after his death.

Replevin was brought by Miss Patton against the administrator of Telford's estate, for the certificate, and the Supreme Court in reversing the judgment of the lower court in favor of Miss Patton, held, in substance, that an instruc-

tion which ignored the subject of a delivery by Telford to Miss Patton was erroneous.

The case is a very able presentation of numerous questions suggested by the record in this case, and has been followed and approved in Williams v. Chamberlain, 165 Ill. 210, as to such features as were common to both.

The record here suggests, rather than enforces upon us, quite a number of other considerations, but the presumption is they will be correctly dealt with upon a trial of the cause upon its merits, and a discussion of them in advance of such trial might be premature.

Evidence upon the issues presented by the first special plea, and the replication thereto, ought to have been submitted to the jury.

As to the second special plea, the demurrer to that seems to have been properly sustained, but we say this without prejudice to the appellant's right to apply to the Superior Court for leave to properly plead further, if so advised to be necessary to its rights.

The judgment of the Superior Court is reversed and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*